UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| TERESA POPE HOOKS, individually )<br>and ESTATE OF DAVID HOOKS, )<br>by Teresa Pope Hooks, Administratrix )<br>         ) <br>         Plaintiffs,  ) <br>         ) <br>v.         ) <br>         ) <br>CHRISTOPHER BREWER, ) <br>in his individual capacity, STEVE ) <br>VERTIN, in his individual capacity, ) <br>WILLIAM "BILL" HARRELL, ) <br>in his individual capacity, and ) <br>RANDALL DELOACH, ) <br>in his individual capacity, ) <br>         ) <br>         Defendants.  ) | CIVIL ACTION FILE NO.:<br>3:16-CV-00023-DHB-BKE |

## DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF JEFFREY NOBLE AND BRIEF IN SUPPORT THEREOF

COME NOW Christopher Brewer, Steve Vertin, and William "Bill" Harrell (hereinafter collectively "Defendants"), named as Defendants in the above-styled action, and pursuant to Rules 702 and 403 of the Federal Rules of Evidence and Local Rule 7.1, submit this, their Motion to Exclude Expert Witness Testimony of Jeffrey Noble and Brief in Support Thereof, and respectfully show the Court as follows:[1]

### STATEMENT OF FACTS

Plaintiffs brought this action pursuant to 42 U.S.C. §1983 for alleged violations of the Fourth Amendment of the United States Constitution and for state law claims, including false

---

[1] Randall Deloach has been dismissed as a party to this suit. See Order Dismissing Defendant Deloach, Doc. No. 62. Defendants have designated an expert, W.D. Libby, essentially to rebut the opinions of Plaintiffs' expert/Plaintiffs' allegations, but will, in the event this motion is granted, withdraw such expert. See Notice of Disclosure of Witness, attached hereto as Exhibit 5.

1

imprisonment, property damage, and punitive damages. See generally Plaintiffs' Complaint and Amended Complaint, Doc. Nos. 1 and 35. Specifically, Plaintiffs contend that Defendant Brewer knowingly and with reckless disregard of the truth made false or misleading statements to the magistrate in obtaining a search warrant for Plaintiffs' home. See Doc. No. 35, ¶79. Plaintiffs further allege that Defendant Harrell was aware of Defendant Brewer's "illegal and improper conduct in obtaining the search warrant." Id. at ¶75. Plaintiffs allege that in executing the search warrant, Plaintiff Teresa Hooks (hereinafter "Ms. Hooks") was detained for a prolonged period of time, past the time required to execute the search warrant. Id. at ¶¶87 – 88. Additionally, Plaintiffs allege that their property was damaged during the execution of the search warrant. Id. at ¶90.

Plaintiffs have disclosed, pursuant to Fed. R. Evid. 26(a)(2), and intend to introduce the testimony of Jeffrey Noble (hereinafter "Noble") to establish that Defendant Brewer lacked probable cause, that executing the search warrant at night was inconsistent with generally accepted police practices, that Defendant Harrell's approval that there was probable cause for the search warrant was inconsistent with generally accepted police practices, and that the detention of Mrs. Hooks was unreasonably prolonged. See Expert Report of Jeffrey J. Noble, attached hereto as Exhibit 1; Supplemental Expert Report of Jeffrey J. Noble, attached hereto as Exhibit 2; and Second Supplemental Expert Report of Jeffrey J. Noble, attached hereto as Exhibit 3. Noble opines in his reports as follows:

Opinion 1:

No reasonable police officer would have believed that probable cause existed or that a search warrant should have been issued in this matter.

Opinion 2:

The tactical decision to immediately execute the search warrant was unreasonable and inconsistent with generally accepted police

2

>   practices and increased the likelihood of harm to David and Teresa Hooks.

Opinion 3:

>   Sheriff Harrell's approval for seeking and obtaining the search warrant for the Hooks' residence was unreasonable and inconsistent with generally accepted police practices.

Opinion 4:

>   Corporal Vertin's Prolonged Detention of Ms. Hooks was unreasonable and inconsistent with generally accepted police practices.

See Ex. 1, 2, 3.

Defendants move to exclude Noble's testimony on the grounds that he is not qualified to give an expert opinion with regard to Georgia law or Laurens County Sheriff's Office Standard Operating Procedures (hereinafter "SOPs"), his methodology is not reliable, and his testimony is not necessary or helpful to the jury.[2]

## ARGUMENT AND CITATION OF AUTHORITY

I. <u>Standards of Admissibility and Discussion of Relevant Law.</u>

Federal Rule of Evidence 702 provides:

>   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

---

[2] Each Defendant has contemporaneously filed a motion for summary judgment. Defendants submit Plaintiffs' purported expert's opinions do no provide sufficient evidence to impact the pending motions and submit summary judgment is proper regardless of Mr. Noble's indicated opinions.

It is well-settled that the guidelines enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) govern the admissibility of expert testimony under Rule 702 and otherwise. U.S. v. Paul, 175 F.3d 906, 910 (11th Cir. 1999). The United States Supreme Court in Daubert directed:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue...Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.

Daubert, 509 U.S. at 592-595 (citations omitted). Though Daubert involved scientific experts, the Supreme Court has made it clear that the strictures of Rule 702 and Daubert apply with equal force to nonscientific expert witnesses. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). As the Court further stated in Kumho Tire:

> The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Id. at 152; accord, In re Polypropylene Carpet Antitrust Litig., 93 F. Supp. 2d 1348, 1352 (N.D. Ga. 2000) (objective is to ensure the reliability and relevancy of expert testimony) (citations omitted).

Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific,

technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc. 158 F. 3d 548, 562 (11th Cir. 1998) (citing Fed. R. Evid. 702). The Eleventh Circuit has further applied the Daubert standard in Allison v. McGhan Medical Corp., in which the Court emphasized the gatekeeper role of the trial judge:

> the judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist factual determinations, its potential to create confusion, and its lack of probative value.

Allison v. McGhan Medical Corp., 184 F.3d 1300, 1311-12 (11th Cir. 1999).

Applying the above three-prong test to the case at bar requires the exclusion of Noble's opinions. Admission of the subject testimony is improper because a thorough examination discloses that none of the three prongs (qualifications, reliability, or helpfulness) is satisfied by Plaintiffs' purported expert.

### A. Qualifications

"To qualify to testify as an expert, a witness must be able to testify competently regarding the matters [he] intends to address by virtue of [his] education, training, experience, knowledge, or skill." Fed. R. Evid. 702. "A witness's qualifications must correspond to the subject matter of his proffered testimony." Moore v. Wright Med. Tech., Inc., 1:14-CV-62, 2016 WL 1316716, at *2 (S.D. Ga. Mar. 31, 2016). "If the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." U.S. v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (emphasis supplied by court) (quoting Fed. R. Evid. 702).

"[E]xtensive experience as an expert witness may warrant a closer scrutiny of a proffered expert's qualifications." Bracey v. Jolley, 1:10-cv-4064-TCB, 2012 WL 12870257 *2 (N.D. Ga.

Aug. 3, 2012). "That a person spends substantially all of his time consulting with attorneys and testifying is not a disqualification. But experts whose opinions are available to the highest bidder have no place testifying in a court of law, before a jury, and with the imprimatur of the trial judge's decision that he is an 'expert." Id. (quoting In re Air Crash Disaster at New Orleans, La., 795 F.2d 1230, 1234 (5th Cir. 1986)). Here, Noble testified that he has served as an expert on thirty-seven cases since 2015. See Deposition of Jeffrey Noble, excerpts of which are attached hereto and incorporated herein as Exhibit 6, p. 18, ll. 5-17. Therefore, his qualifications, opinions, and testimony should be more strictly scrutinized than an expert who does not routinely testify.

Undeniably, Noble has extensive experience as a police officer in the State of California. See Noble CV, attached hereto as Exhibit 4. However, Noble is unfamiliar with the laws of the State of Georgia and the policies and procedures of Laurens County Sheriff's Office.[3] See generally Ex. 1-4; Noble depo., p. 92, ll. 17-21 & p. 93, l 24 – p. 94, l. 13 (admits not knowing Georgia law). Noble is therefore not qualified to testify with regard to the general police practices in the State of Georgia. In fact, Noble has already indicated that he does not intend to testify with regard to whether Mrs. Hooks's detention was unreasonable under Georgia law. See Noble depo., p. 94, l. 13 ("under Georgia law, no, I don't have an opinion"). It is incongruent to allow Noble to testify regarding whether Defendants followed "general" police procedure when Noble admittedly does not even know what procedures officers in Georgia are required to follow. See e.g. Noble depo., p. 67, ll. 15-23 (admits that he does not know whether it is required for officer to confer

---

[3] Noble does not indicate that he "reviewed or relied" upon Lauren's County Sheriff's Office SOPs, he indicates he relied upon the GBI report, which only contains the procedures regarding use of the Special Response Team ("SRT") and use of force. In his report, Noble conceded that policy/procedure was followed with regard to use of the SRT and does not opine as to the use of force. See Ex. 1, p. 66(64)(b); Noble depo, p. 89, ll. 11- 17 (does not offer opinion on circumstances leading to shooting and subsequent death).

6

with district attorney before obtaining search warrant); p. 92, ll. 17 – 21 (admits he does not know whether it is required in Georgia to detain a witness at scene after a shooting until GBI arrival). Thus, Noble is not familiar with/qualified to testify on the general police practices of officers in the State of Georgia and should be excluded from testifying with regard to any actions of Defendants especially with regard to Georgia law.

B. Reliability

When expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." Kuhmo Tire, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592). "In other words, the Court's inquiry focuses not on whether the expert is correct, but whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field." Wilson, 2007 WL 4794112 at *2. "[W]hile an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." Frazier, 387 F.3d at 1261 (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F. 3d 1333, 1341-42 (11th Cir. 2003)).

"The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." See Fed.R. Evid. 702, advisory committee's notes. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Id. "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." Cook ex rel. Estate of

Tessier v. Sheriff of Monroe County, Fla., 402 F.3d 1092, 1113 (11th Cir. 2005). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Frazier, 387 F.3d at 1261 (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends)). "At a minimum, the expert testimony should include a description of the method used.... The expert's assurance that the methodology and supporting data is reliable will not suffice." Bowers v. Norfolk S. Corp., 537 F. Supp. 2d 1343, 1372 (M.D. Ga. 2007), aff'd, 300 Fed. Appx. 700 (11th Cir. 2008) (quoting Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir.1999)). Furthermore, "an expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions." McDowell v. Brown, 392 F.3d 1283, 1300 (11th Cir. 2004); see also, Cook, 402 F.3d at 1111. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Cook, supra 402 F. 3d at 1111 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Noble does not actually cite or quote any generally accepted police procedures in his reports. See generally Ex. 1-3. Instead he relies on his own opinion articles to support the opinions he forms in this matter or case law which he does not properly cite or explain. See e.g. Ex. 1, p. 65, fn. 267, 268 & p. 67, fn. 270; see also, Ex. 1, p. 66(66). In Noble's four opinions, he cites only one of Laurens County Sheriff's Office SOPs regarding when it is appropriate to request the SRT team. See Ex. 1, p. 66(64)(b). However, even in citing the SOPs Noble does not criticize the decision to use the SRT team; his opinion instead focuses on the time of service. Id. While Noble continually states that the actions of Defendants were "unreasonable and inconsistent with generally accepted police standards," Noble never explains what the "generally accepted police standards" are. See Ex. 1-3.

An example of Noble's improper use of "generally accepted police standards" is within his first opinion. Noble states that Defendant Brewer "failed to inform the magistrate of all the reasons that Mr. Garrett turned [sic] surrendered to Deputy Brooks." See Ex. 1, p. 63(f). However, during his deposition Noble recognizes that there are no standards regarding disclosing all the reasons an informant has surrendered. See Noble depo., p. 62, l. 12 -p. 63, l. 5. Therefore, Noble's opinion cannot be based upon "generally accepted police practices."

In Noble's second opinion regarding the decision to serve the warrant at night, he admits that "[i]n Georgia, police officers may serve a search warrant at 'any reasonable time.'" Ex. 1, p. 67(67). Noble then asserts that service of a warrant at night is improper and indicates that "a court may indeed find such searches, absent legitimate cause, to be unconstitutional." See Ex. 1, p. 66(b).[4] He further argues that "[m]any states have shown their aversion to nighttime searches." Ex. 1, p. 66(66)(b). However, under Georgia law, courts have "never held that…the nighttime execution of a warrant is presumptively unreasonable." Fair v. State, 284 Ga. 165, 173 (2008). Noble admittedly only worked as a police officer in the State of California. See Ex. 4; see also Noble depo. p. 31, ll. 16-18 (lived in California since age 11). In the State of California, police must make a special showing to serve a warrant at night. See Cal. Penal Code § 1533 ("[u]pon a showing of good cause, the magistrate may, in his or her discretion, insert a direction in a search warrant that it may be served at any time of the day or night"). Noble clearly applied California statutes, where he should have applied Georgia police practice standards.

---

[4] Federal law specifically recognizes that drug warrants in particular may be served at "any time day or night." See 21 U.S.C. §879 ("A search warrant relating to offenses involving **controlled substances** may be served at any time of the day or night") (emphasis added); see also Gooding v. U. S., 416 U.S. 430, 458 (1974) (no requirement for special showing to serve search warrant for narcotics at night); U.S. v. Tucker, 313 F.3d 1259, 1264 (10th Cir. 2002) (no special showing for night time service); U.S. v. Rizzi, 434 F.3d 669, 671 (4th Cir. 2006) (no special showing for night time service).

Noble's third opinion is a series of analytical leaps.  Noble notes that "Sheriff Harrell said he **did not** read the search warrant the night it was served, but Sergeant Brewer told him the basis…" Ex. 2, p. 1 (emphasis added).  Noble does not indicate that Defendant Harrell had any knowledge whether any information was allegedly "stale," nor does he indicate that Defendant Harrell had any knowledge that Defendant Brewer "believed Mr. Garrett was untruthful." Ex. 1, pp.61 – 62; c.f. Ex. 2.  Further, Noble states that Defendant Harrell was "present at the police facility prior to the conclusion of the Garrett interview…", Noble gives no basis for why he believes this.[5]  See Ex. 2, p. 2(5). Noble improperly hypothesizes that Defendant Harrell had knowledge of "facts" known only by other individuals. Therefore, Noble's opinion that Defendant Harrell's actions were "unreasonable and inconsistent with 'generally' accepted police practices" should be excluded as unreliable.

In Noble's fourth opinion, he once again failed to apply any police practice standards. Noble declares that Mrs. Hooks's detention was unreasonable.  See Ex. 3.  During Noble's deposition, he was asked whether during a search of a house, any residents/witnesses should be kept under control.  See Noble depo., p. 90, ll. 22-25.  Noble responds, "No, I disagree with that. And I think there's cases contrary to that."  Id. at p. 91, ll. 1-2.[6]  Noble did not apply "generally accepted police practices," but instead applied case law.[7]

---

[5] Noble states that Deputy Padgett testified a call was made to Assistant District Attorney Faircloth five minutes after the interview with Garrett concluded. Ex. 2, p. 2(5). There is no evidence Defendant Harrell was present at the station for this phone call.

[6] The case law is actually contrary to Noble's opinion.  See e.g. Bailey v. U.S., 133 S. Ct. 1031, 1037 (2013) (Law enforcement are authorized "to detain the occupant of premises subject to a valid search warrant"); see also Muehler v. Mena, 544 U.S. 93, 100–02, 125 S. Ct. 1465, 161 L.Ed.2d 299 (2005) (holding law enforcement acted reasonably by detaining even non-suspect occupant of residence in handcuffs for up to three hours).

[7] According to Noble's CV he is a licensed California attorney, but he is not holding himself out to be a legal expert in this case. See Ex. 4; see also e.g. Morales v. Fry, C12-2235-JCC, 2014 WL

C. <u>Helpfulness</u>

Experts may not testify as to a legal conclusion or on the legal implications of conduct; the court is the sole proper source of the law.  See <u>e.g.</u>, <u>Montgomery v. Aetna Causalty & Surety Co</u>., 898 F.2d 1537, 1541 (11th Cir. 1990) (that a party has a legal duty to do something is not a proper subject of expert testimony).  Reasonableness and foreseeability are matters of law for the court to determine.  <u>Aguilar v. International Longshoremen's Union Local 10</u>, 966 F.2d 443, 447 (9th Cir. 1992) (foreseeability of worker reliance on a promise was an inappropriate subject for expert testimony).

Noble's opinions and basis for same consist of mere legal conclusions and intrude upon the domain of this Court.  With regard to Noble's first and third opinions, Noble concludes that no probable cause existed.  However, finding of probable cause is a "pure question of law for the Court to decide." <u>Marx v. Gumbinner</u>, 905 F.2d 1503, 1507 (11th Cir. 1990). The Eleventh Circuit has recognized, "[i]n dealing with probable cause,...as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  <u>Id.</u> at 1507 (<u>quoting</u> <u>Brinegar v. U.S.</u>, 338 U.S. 160, 175 (1949)).  Thus, Noble's first and third opinions impinges upon the Court's province.

Furthermore, the proffered testimony of Noble is not such as will aid the jury with review of the evidence.  It has been long-established that expert testimony about matters within the ken of a jury is not helpful and, therefore, not admissible:

> Expert testimony is generally not permitted about factual issues within the knowledge and experience of ordinary lay people because it would not assist the trier of fact to understand the evidence or determine a fact in issue. The

---

12042563 (W.D. Wa. March 25, 2014) (Noble was admonished for attempting to testify as a legal expert).

> trier of fact is fully capable of understanding the evidence and deciding the issue through use of its common knowledge and common sense.

Weinstein's Federal Evidence, sect. 702.03[2][a], pp. 702-40 to 702-41 (Rel. 94-2/2009); see also Weinstein, supra, sect. 702.03[2][b] at pp. 702-43. Putting it another way, expert testimony that adds nothing beyond the understanding and experience of the average person is routinely excluded. U.S. v. Cano, 289 F.3d 1354, 1363-69 (11th Cir. 2002); U.S. v. Rouco, 765 F.2d 983 (11th Cir. 1985). So too, expert testimony is not admissible if it does no more than--as here--tell the finder of fact what conclusion to reach.

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day.

Fed. R. Evid. 704 Advisory Committee's 1972 Proposed Rule Comments. See Montgomery v. Aetna Casualty & Surety Co., supra. As the Second Circuit Court of Appeals has stated:

> [Expert testimony that] undertakes to tell the jury what result to reach … does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside his limited role of providing the groundwork in the form of opinion to enable the jury to make its own informed determination.

U.S. v. Duncan, 42 F.3d 97, 101 (2nd Cir. 1994) (telling the jury what conclusion to reach requires exclusion); see also Cook, supra, 402 F.3d at 1108 (approving the trial court's finding fault with a witness arguing to the jury, which is tantamount to telling the jury how to rule).

Expert testimony is not a substitute for a lawyer's closing arguments. Green v. Kinney Shoe Corp., 715 F. Supp. 1122, 1123 (D.D.C. 1989); see also e.g. Cook, 402 F.3d at 1108. Nor may the expert opine on issues committed exclusively to the trier of fact. See e.g., Snowden v. Singletary, 135 F.3d 732, 737-38 (11th Cir. 1998) (finding experts may not opine on the credibility of witnesses). Furthermore, "[b]ecause of the powerful and potentially misleading effect of expert


evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." See Frazier at 1263 (internal cit. omitted). Rule 403 of the Federal Rules of Evidence operates to exclude otherwise relevant evidence on grounds of prejudice, confusion, or waste of time:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

To allow Noble's projections based on such speculation into evidence would do nothing more than to create confusion for the jury. Allison, 184 F.3d 1311-12.

Noble's second opinion, regarding the reasonableness of the tactical decision to immediately execute the search warrant, will only serve to confuse the jury. His second opinion is rife with legal analysis and conclusions. For example, Noble opines, "[w]hile some states have not enacted statutes that prohibit nighttime searches, officers from those states are still responsible to exercise due care and reasonableness under the Fourth Amendment." Ex. 1, p. 66(66)(b). Noble further states, "[c]onsidering the distaste of late-night/early-morning searches by government, a court may indeed find such searches, absent legitimate cause, to be unconstitutional." Id. at p. 67(66)(c). Noble's opinions here are little more than closing arguments delivered under the guise of expert opinion and, as noted above, advocating views unsupported by the law. Therefore, Noble's second opinion is not helpful to the trier of fact and is, moreover, confusing.

With regard to Noble's fourth opinion, his testimony will likewise only serve to confuse the jury. Noble has already testified that he cannot opine as to whether under Georgia law Mrs. Hooks should have been detained until she was questioned by GBI regarding the shooting. See Noble depo., p. 92, ll. 17-21 & p. 93, l 24 – p. 94, l. 13. Furthermore, Noble's fourth opinion focuses on legal conclusions. Noble states in his deposition that he is giving his opinion as to the

constitutionality of the detention.  See Id. at p. 91, ll. 22-25.  Noble does not hold himself out as an expert in the legal field, but as a police practices expert.  Furthermore, his argument makes unreasonable assumptions. Noble agrees that the initial detention of Mrs. Hooks was not unreasonable.  Noble depo. p. 89, l. 23 – p. 90, l. 3.  Noble takes issue with the continued detention of Mrs. Hooks after the house, but not the property, was "secured."  Id. at p. 90, ll. 11-18. However, Noble admits that he cannot determine when Mrs. Hooks's "unreasonable" detention began.  See Id. at p. 90, ll. 9-10. Noble seems to just assume that at some point, Mrs. Hooks's detention must have become unreasonable. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  Cook, supra 402 F. 3d at 1111 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).  Noble's testimony regarding the reasonableness of Mrs. Hooks' detention will only serve to confuse the jury.

In fact, Noble has been excluded from testifying for similar issues.  See Morales v. Fry, C12-2235-JCC, 2014 WL 12042563 (W.D. Wa. March 25, 2014).  The Morales Court noted, "Mr. Noble's report rarely discusses the standards of police practice against which he compares the conduct in this case, instead jumping straight to legal conclusions."  Id. at *3.  The Morales Court went on to state "an attempt to offer legal reasoning or conclusions through expert testimony is not permissible."  Id. (citing Hygh v. Jacobs, 961 F.2d 359, 364 (2d Cir. 1992) (where expert on police practices testified that use of force was not justified court found testimony improperly intruded into the jury's domain)).  In the end, Noble was not precluded from testifying entirely, but he was not allowed to offer opinions regarding whether any conduct was "reasonable under the circumstances," "objectively reasonable," "justified under the circumstances," or whether there was probable cause to support the plaintiff's arrest.[8] Id.  Noble's opinions in this matter are similar

---

[8] Noble was testifying on behalf of the Defendant in Morales.

14

in that they rarely, if ever, discuss standards of police practice and instead jump straight to legal conclusions.  See Ex. 1, 2, 3. In short, the testimony provided by Noble "offers nothing more than what the lawyers for the parties can argue in closing arguments," See Frazier, 387 F.3d at 1262-63, invades the province of the court as to legal issues, and would confuse the jury as to both the law and relevant facts.  Noble's testimony is inadmissible, rife with legal conclusions, and intrudes upon the domain of both the judge and jury and, therefore, should be excluded.

## CONCLUSION

For the within and foregoing reasons, Defendants respectfully request that the Court hear oral argument regarding the qualifications of Jeffrey Noble, and that it grant Defendants' Motion to Exclude Expert Witness Testimony of Jeffrey Noble and Brief in Support Thereof.

This 18th day of May 2017.

Respectfully submitted,

**BUCKLEY CHRISTOPHER P.C.**

/s/ Timothy J. Buckley III
_____
TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
KELLY L. CHRISTOPHER
Georgia State Bar No. 609879
Attorneys for Defendants

2970 Clairmont Road
Suite 650
Atlanta, GA 30329
404-633-9230
tbuckley@bchlawpc.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this day served the foregoing DEFENDANTS' MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF JEFFREY NOBLE AND BRIEF IN SUPPORT THEREOF upon all parties to this matter using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Mitchell M. Shook, Esq.
Salter, Shook & Tippett
P. O. Drawer 300
Vidalia, GA 30475

Brian Spears, Esq.
1126 Ponce de Leon Ave.
Atlanta, GA 30306

This 18th day of May, 2017.

**BUCKLEY CHRISTOPHER, P.C.**

/s/ Timothy J. Buckley III
_____
TIMOTHY J. BUCKLEY III
Georgia State Bar No.092913
KELLY L. CHRISTOPHER
Georgia State Bar No. 609879
Attorneys for Defendants

2970 Clairmont Road N.E.
Suite 650
Atlanta, Georgia 30329
(404) 633-9230
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
kchristopher@bchlawpc.com