UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| TERESA POPE HOOKS, individually )<br>and ESTATE OF DAVID HOOKS, )<br>by Teresa Pope Hooks, Administratrix )<br>   )<br>Plaintiffs, )<br>   )<br>v. )<br>   )<br>CHRISTOPHER BREWER, )<br>in his individual capacity, )<br>   )<br>Defendant. ) | CIVIL ACTION FILE NO.:<br>3:16-CV-00023-DHB-BKE |

**DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF FRANCIS RUSHING AND BRIEF IN SUPPORT THEREOF**

COMES NOW Christopher Brewer ("Brewer"), named as Defendant in the above-styled action, and pursuant to Rules 702 and 403 of the Federal Rules of Evidence and Local Rule 7.1 submit this, his Motion to Exclude Expert Witness Testimony of Francis Rushing and Brief in Support Thereof, and respectfully shows the Court as follows:

**STATEMENT OF FACTS**

Plaintiff Teresa Pope Hooks ("Teresa"), individually and as Administratrix of the Estate of David Hooks ("Decedent") (collectively referred to herein as "Plaintiff" or "the Hooks"), brought this action pursuant to 42 U.S.C. §1983 for alleged violations of the Fourth Amendment and for state law claims, including wrongful death, property damage, and punitive damages. See generally Plaintiff's Complaint and Amended Complaint, Doc. 35.  Specifically, Plaintiff contends that Defendant Brewer knowingly and with reckless disregard of the truth made false or misleading statements to the magistrate in obtaining a search warrant for the Hooks home, which according to Plaintiff ultimately led to the death of Decedent.  See Doc. 35, ¶79.

Plaintiff has disclosed, pursuant to Fed. R. Evid. 16(a)(2), and intends to introduce the testimony of Dr. Francis Rushing (hereinafter "Rushing") as an economics expert, who has produced a report of estimated loss of earning capacity and loss of household services for Decedent.  In his report, Rushing alleges that Decedent, who was 59 on the date of his death, had a life expectancy of an additional 19.26 years.  See Deposition of Dr. Francis Rushing, Ex. 3, attached as Exhibit A.

Rushing relied on the following facts and assumptions in his report: Decedent finished the eleventh grade and obtained a GED. Id. at p. 2, ¶2.  Decedent was self-employed for twenty years prior to July of 2014 and was the owner of Eastside Construction, Inc. Id. at p. 2, ¶3.  On July 31, 2014, Decedent began working as a Job Foreman with Graham Brothers Construction ("Graham Brothers") at the hourly wage of $28.00 and an overtime rate of $42.00 per hour. Id. at p. 2, ¶4.  Decedent only worked for 6.5 weeks for Graham Brothers prior to his death. Id.  Based on Decedent's hourly wage for the 6.5 weeks Decedent worked at Graham Brothers, Rushing determined Decedent's annualized wage would have been $77,149. Id. at p. 2, ¶5.

Rushing performed three calculations for the loss of earning capacity—Profile 1 (Worklife of 4.06 years) with a present value of past lost wages as $409,797; Profile 2 (Retirement at age 67) with a present value of past lost wages of $680,727 and present value of future lost wages at $90,930 for a total of $771,657; and Profile 3 (Retirement at age 70) with a present value of past lost wages of $680,727 and present value of future lost wages at $353,759 for a total of $1,034,486. Rushing depo., Ex. 3, p. 3.  In addition, Rushing calculated the total value of lost past household services at $75,062 and future lost household services at $123,486. Id. at p. 4.

According to Jeff Graham ("Graham"), principal and owner of Graham Brothers, Decedent's contract was expected to be completed on or before December 31, 2014.  See Affidavit

of Jeff Graham, ¶2-8, attached hereto as Exhibit B.  While Decedent could bid for other contracts, he was not guaranteed to land a contract with Graham Brothers.  Id. at ¶12.  Further, according to Graham, neither he nor an agent for his company has been contacted by Rushing regarding Decedent's employment at Graham Brothers.  Id. at ¶¶16-17.  However, Rushing claims that he spoke with someone named "James Graham" about Decedent's employment.  Rushing depo., pp. 27-28.  James Graham testified he did not employ Decedent.  See Deposition of James Graham, pp. 10, 12, attached hereto as Exhibit C.

Upon the death of Hooks, the Georgia Bureau of Investigations performed a drug test on Decedent.  See Deposition of Brittney Gresham, Ex. 2, attached hereto as Exhibit D.  The results returned positive for amphetamine, methamphetamine, and midazolam.  Id.  According to GBI Forensic Toxicologist Brittney Gresham, who issued the toxicology report, the amount of methamphetamine in Decedent's system at the time of Decedent's death was sufficient to result in an overdose in an individual who had not developed a tolerance.  See Gresham depo., p. 16.

Rushing's figures fail to take into account that Decedent's contract work with Graham Brothers was set to end in December 2014, Decedent's continued methamphetamine use, the possibility of overdose, and/or arrest for future methamphetamine-related crimes.  While Rushing admitted that it was "possible" drug use may have an impact on an individual's career, because drug use involves multiple variables, it is not something he takes into account when writing his report.  Rushing depo., p. 43-44.

**ARGUMENT AND CITATION OF AUTHORITY**

**I.      Standards of Admissibility and Discussion of Relevant Law.**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

It is well-settled that the guidelines enunciated in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) govern the admissibility of expert testimony under Rule 702 and otherwise. U.S. v. Paul, 175 F.3d 906, 910 (11th Cir. 1999). The United States Supreme Court in Daubert directed:

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue...Many factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test. But some general observations are appropriate.

Daubert, 509 U.S. at 592-595 (citations omitted). Though Daubert involved scientific experts, the Supreme Court has made it clear that the strictures of Rule 702 and Daubert apply with equal force to nonscientific expert witnesses. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). As the Court further stated in Kumho Tire:

> The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

Id. at 152; accord, In re Polypropylene Carpet Antitrust Litig., 93 F. Supp. 2d 1348, 1352 (N.D. Ga. 2000) (objective is to ensure the reliability and relevancy of expert testimony) (citations omitted).

Expert testimony may be admitted into evidence if: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F. 3d 548, 562 (11th Cir. 1998) (citing Fed. R. Evid. 702). The Eleventh Circuit has further applied the Daubert standard in Allison v. McGhan Medical Corp., in which the Court emphasized the gatekeeper role of the trial judge:

> the judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist factual determinations, its potential to create confusion, and its lack of probative value.

Allison v. McGhan Medical Corp., 184 F.3d 1300, 1311-12 (11th Cir. 1999).

Applying the above three-prong test to the case at bar requires the exclusion of Rushing's opinions. Admission of the subject testimony is improper because a thorough examination discloses that only two of the three prongs (qualifications, reliability, or helpfulness) are satisfied by Plaintiffs' purported expert. "The Daubert 'requirement that the expert testify to scientific knowledge - conclusions supported by good grounds for each step in the analysis - means that *any* step that renders the analysis unreliable under the Daubert factors renders the expert's testimony inadmissible.'" Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 267 (2002) (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3rd Cir.1994)).

## II.     Qualifications

Defendant does not dispute Rushing's qualifications.

## III.    Reliability

When expert "testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, ... the trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of [the relevant] discipline." Kuhmo Tire, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 592). "In other words, the Court's inquiry focuses not on whether the expert is correct, but whether the proponent of expert testimony has established by a preponderance of the evidence that the testimony is reliable in the context of the methodologies or techniques applied within the appropriate field." Wilson, 2007 WL 4794112 at *2. "[W]hile an expert's overwhelming qualifications may bear on the reliability of his proffered testimony, they are by no means a guarantor of reliability." U.S. v. Frazier, 387 F.3d 1244, 1261 (11th Cir. 2004) (quoting Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F. 3d 1333, 1341-42 (11th Cir. 2003)).

"The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." See Fed.R. Evid. 702, advisory committee's notes. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" Frazier, 387 F.3d at 1261 (quoting Fed.R.Evid. 702 advisory committee's note (2000 amends)). "At a minimum, the expert testimony should include a description of the method used.... The expert's assurance that the methodology and supporting data is reliable will not suffice." Bowers v. Norfolk S. Corp., 537 F. Supp. 2d 1343, 1372 (M.D. Ga. 2007), aff'd, 300 Fed. Appx. 700 (11th Cir. 2008) (quoting Mitchell v. Gencorp Inc., 165 F.3d 778, 781 (10th Cir.1999)).  Furthermore, "an expert opinion is inadmissible when the only

connection between the conclusion and the existing data is the expert's own assertions." McDowell v. Brown, 392 F.3d 1283, 1300 (11th Cir. 2004); see also, Cook, 402 F.3d at 1111. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Cook, supra 402 F. 3d at 1111 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

Here, Rushing provides estimates for loss of wages based on Decedent's sex, age, education level, and employment history.  While these factors are important when determining lost earnings, they fail to consider multiple critical factors relevant to Decedent.  In determining lost earnings, an award "involves four steps:  estimating the loss of work life resulting from the injury or death, calculating the lost income stream, computing the total damage, and discounting that amount to its present value."  Buland v. NCL (Bahamas) Ltd, 992 F.3d 1143, 1150 (11th Cir. 2021).

Rushing's calculations assume that Decedent would continue working with Graham Brothers.  This assertion is wholly unsupported by the record.  "[S]omething doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive." Hughes v. Kia Motors Corp., 766 F.3d 1317, 1331 (11th Cir. 2014) (quoting McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir.2004)).  According to Jeff Graham, Decedent's contract with Graham Brothers was estimated to end on or before December 31, 2014.  See Ex. B.  Rushing indicated that had he used Decedent's salary information for the years leading up to Decedent's death, the numbers would be at least 50% less than only using information from the 6.5 weeks before Decedent's death.  Rushing Depo., pp. 95-97.  Rushing indicated that he used the 6.5 weeks of information because he had allegedly spoken with "James Graham."  Rushing depo., pp. 27-28.

As noted above, James Graham did not employ Decedent and Jeff Graham indicated that Decedent's contract was set to end on December 31, 2014.  James Graham depo., pp. 10, 12; Ex. B. ¶8.  Therefore, Rushing's opinion relies upon incomplete and incorrect data and should be excluded.  See United States v. Pitts, 794 Fed. Appx. 868, 872 (11th Cir. 2019) (upholding exclusion of expert who relied on biased and incomplete data).

Additionally, the GBI toxicology screen of Decedent indicates that Decedent had either taken a sufficient quantity of methamphetamine to overdose or was a habitual user who had developed a tolerance for methamphetamines.  Gresham depo., p. 16, Ex. 2.  Rushing's estimation fails to take into consideration Decedent's methamphetamine usage as a factor in calculating Decedent's lost wages.  Rushing depo., p. 43-44.  In fact, Rushing indicated that he did not take into account Decedent's lifestyle at the time of his death.  Id. at p. 43-44.  However, Rushing admitted that such factors could affect the longevity of Decedent's career path.  Id.  Because Rushing could not give an estimation of how Decedent's lifestyle affected his future earnings, his testimony is unreliable and should be excluded.  Hughes, 766 F.3d at 1331 (excluding testimony of an expert who could not "express an opinion about how the various impacts would have affected [plaintiff]."

Because Rushing relied on unsupported data and failed to take into consideration Decedent's lifestyle, Rushing's testimony is unreliable as it provides simply too great an analytical gap between the evidence and the opinions proffered.

**IV.     Helpfulness**

Experts may not testify as to a legal conclusion or on the legal implications of conduct; the court is the sole proper source of the law.  See e.g., Montgomery v. Aetna Causalty & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1990) (that a party has a legal duty to do something is not a proper

8

subject of expert testimony). "[E]vidence that the moon was full on a certain night will not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night. Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent injury as a precondition to admissibility." Daubert, 509 U.S. at 591-2. Reasonableness and foreseeability are matters of law for the court to determine. Aguilar v. International Longshoremen's Union Local 10, 966 F.2d 443, 447 (9th Cir. 1992) (foreseeability of worker reliance on a promise was an inappropriate subject for expert testimony).

The admission of Rushing's testimony would serve only to confuse the jury as it fails to consider foreseeable implications of Decedent's lifestyle. Decedent's involvement with methamphetamine and being able to use an amount which would result in an overdose to one who does not use methamphetamine is certainly detrimental to one's life and earning capacity. It is foreseeable and reasonable for an estimation of lost earnings to consider this. Additionally, Rushing's testimony includes estimations for a job which Decedent was only to be employed for a few months. Rushing's estimations fail to consider this and instead offer a bolstered estimation of what Decedent could potentially make. Rushing's failure to take these facts into consideration makes his testimony inaccurate and unhelpful as it would not provide the jury with accurate estimations.

## CONCLUSION

For the within and foregoing reasons, Defendants respectfully request that the Court hear oral argument regarding the qualifications of Dr. Francis Rushing, and that it grant Defendant's Motion to Exclude Expert Witness Testimony of Francis Rushing and Brief in Support Thereof.

This 30th day of November 2021.

**[Signature on following page]**

Respectfully submitted,

**BUCKLEY CHRISTOPHER P.C.**

/s/ Timothy J. Buckley III

_____

TIMOTHY J. BUCKLEY III
Georgia State Bar No. 092913
KELLY L. CHRISTOPHER
Georgia State Bar No. 609879
Attorneys for Defendant

2970 Clairmont Road
Suite 650
Atlanta, GA 30329
404-633-9230
tbuckley@bchlawpc.com
kchristopher@bchlawpc.com

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served the foregoing DEFENDANT'S MOTION TO EXCLUDE EXPERT WITNESS TESTIMONY OF FRANCIS RUSHING AND BRIEF IN SUPPORT THEREOF upon all parties to this matter using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Mitchell M. Shook, Esq.
Salter, Shook & Tippett
P. O. Drawer 300
Vidalia, GA 30475

Brian Spears, Esq.
1126 Ponce de Leon Ave.
Atlanta, GA 30306

This 30th day of November, 2021.

**BUCKLEY CHRISTOPHER, P.C.**

/s/ Timothy J. Buckley III
_____
TIMOTHY J. BUCKLEY III
Georgia State Bar No.092913
KELLY L. CHRISTOPHER
Georgia State Bar No. 609879
Attorneys for Defendant

2970 Clairmont Road N.E.
Suite 650
Atlanta, Georgia 30329
(404) 633-9230
(404) 633-9640 (facsimile)
tbuckley@bchlawpc.com
kchristopher@bchlawpc.com